BENNETT *v.* HOUGH.

1. PARTNERSHIP—TITLE TO LAND—EVIDENCE.
    Evidence with respect to lands, paid for by a partnership largely with funds paid into the partnership by one partner, title to which was taken in the name of the partner who furnished the money, examined, and *held,* to show that the lands were in fact purchased as partnership lands.

2. SAME—DEEDS BETWEEN PARTNERS—EFFECT.
    A quitclaim deed from one partner to another, in consideration of "one dollar and other considerations," made so that the latter can expedite the sale of partnership lands, leaving the accounts between the partners to be settled afterwards, does not deprive the lands covered by the deed of their character as partnership property.

Appeal from Wayne; Hosmer, J. Submitted April 4, 1905. (Docket No. 8.) Decided July 25, 1905.

Bill by Fred F. Bennett against Edward C. Hough, administrator of the estate of Lewis C. Hough, deceased, and others for a partnership accounting. From a decree for complainant, defendants appeal. Affirmed.

*Maybury, Lucking, Emmons & Helfman,* for complainant.

*Nichols & Durfee (George Gartner,* of counsel), for defendants.

McAlvay, J.   The bill of complaint was filed by complainant against the administrator and heirs of Lewis C. Hough, deceased, for an accounting and settlement of the partnership affairs of Hough & Bennett, a copartnership composed of complainant, Fred F. Bennett, and Lewis C. Hough, deceased.   The main contention is that certain lands held in the name of Lewis C. Hough at the time of his death are partnership property.   From a decree in favor of complainant, defendants have appealed.

The facts, briefly stated, are as follows:   In June, 1890, complainant and his uncle, Lewis C. Hough, deceased, entered into copartnership in the lumber business in Mississippi.   They resided in Plymouth, Mich.   There were no written articles of copartnership.   Complainant went to Mississippi, where a sawmill was leased and some stumpage purchased, known as the "Eastman Mill and Lands," near Ellisville, Jones county.   The firm name was Hough & Bennett.   Complainant was active manager and superintendent.   Mr. Hough remained in Michigan and occasionally went to Mississippi.   The timber on the Eastman lands, instead of amounting to 3,000,000 feet, as represented, on estimate proved to be between 700,000 and 800,000 feet.   A verbal option on the lands in dispute, known as the "Bynum Lands," at the request of Bennett, was secured from the owner by George F. Maxwell to purchase 2,105 acres for $10,525.   The estimated timber on these lands was 14,000,000 feet.   The purchase was made for the price stated, November 13, 1890.   The deed was made to L. C. Hough.   Of the purchase price, $10,-000 was forwarded by Mr. Hough from Plymouth, Mich., in a draft from the Plymouth Savings Bank, payable to the order of L. C. Hough, indorsed by him to the order of Hough & Bennett.   This draft was indorsed by Hough & Bennett (by Bennett) to the order of John H. Bynum, and delivered by Bennett to him.   The balance of the purchase price, $525, was procured from Baum & Sons, of Ellisville, and given by Bennett to Mr. Maxwell to hand to Bynum.   The $10,000 above mentioned was fur-

nished by Mr. Hough by a loan, secured by a mortgage of $8,000 given by him upon his farm and a mortgage of $2,000 upon the Bynum lands. The Bynum lands were 1¼ miles west from the Eastman lands at the nearest point, and about 3¼ miles west from the mill. The firm purchased, December 21, 1891, 40 acres from B. Du Bose, and on July 23, 1892, 160 acres from Anderson. The Du Bose land adjoined part of the Bynum lands. The Anderson land was 3¾ miles farther west. After the purchase of the Bynum lands, the firm built a tramroad from the mill at Ellisville to within 1½ miles of the Bynum lands. The purpose of the tramroad was to convey logs to the mill. The route was "blazed" or laid out by Maxwell all the way across the Bynum lands. By reason of hard times and low prices for lumber, the Hough & Bennett mill ceased operations in December, 1891. No timber was cut from the Bynum lands. The Bynum, Du Bose, and Anderson lands were assessed to Hough & Bennett up to and including the year 1900. The taxes for most of these years were paid by Maxwell with money sent by Hough, and the tax receipts issued to Hough & Bennett, and sent to Hough.

It 'is stipulated in the case that Bennett contributed $2,100, and Hough about $2,500, to the business up to the cessation of operations in 1892. This does not include payment for the Bynum lands and interest, nor taxes thereon, or taxes on the Du Bose and Anderson lands. January 27, 1900, Bennett quitclaimed his interest in the Du Bose and Anderson lands for $1 and other valuable considerations. On February 15, 1901, Hough sold by land contract all the Du Bose, Anderson, and Bynum lands to N. M. Parker, of Ellisville, Miss., for $34,800, upon which about $20,000 had been paid when this suit was begun. Hough died January 11, 1902. From the time the mill closed in 1892, until the sale of the lands by Hough to Parker in 1901, the firm did no partnership business. The books used by the firm in their business and the firm papers and letters were not produced upon

the hearing. They were in Hough's possession at Plymouth until 1902, and have either been lost or destroyed.

The question in the case is whether or not these lands were purchased as partnership property. Mr. Bennett was the active partner and manager of the business in Mississippi. It was early discovered that the timber on the Eastman lands fell far short of the amount represented when the stumpage was purchased. An actual estimate disclosed that there were not more than 800,000 feet of timber out of 3,000,000 supposed to have been purchased. Maxwell, the estimator, first brought to the attention of Bennett that the Bynum lands were in the market, and at his request secured an option for Hough & Bennett at $5 an acre. The estimated amount of timber on these lands was 14,000,000. All the dealings relative to the Bynum purchase were with the firm, through the managing partner, Bennett. The draft sent by Hough was indorsed by him to the firm, and by the firm indorsed and paid to the owner. The $525 balance of the purchase price was paid by the firm in cash, secured by Bennett from Baum & Sons and by them charged to the firm. The deed, at the request of Bennett, was made to Lewis C. Hough as grantee. For the reason that Mr. Hough is dead and Mr. Bennett is prohibited by statute from testifying, it does not appear why the property was taken in Mr. Hough's name. From the fact that he was obliged to make a loan for the $10,000, sent by draft, and furnished security for the same by mortgages upon this and other property, it is reasonable to presume that it was because of that fact. Other small parcels of land were purchased soon afterward in the firm name. There is no question but that they became partnership property. The Bynum lands were assessed to Hough & Bennett until 1900, and tax receipts issued in their name sent to Hough. Hough never saw these lands until after their purchase. Afterwards he went over them with Maxwell twice—once alone, and once in company with Mrs. Hough. The route of the tramway was blazed out by Maxwell from the mill to the further side of these

lands, and Hough was taken with him along the whole line, and talked about getting the timber out over the tram. The record also discloses the statement made by Hough to many witnesses during a period of years, calling the Bynum lands firm property, and stating that Bennett had an interest therein.

The evidence appears to us to be conclusive that these Bynum lands were purchased as partnership lands. It is claimed that the Du Bose and Anderson lands, after the quitclaim of 1900 by Bennett to Hough, ceased to be partnership property. The consideration for such deed was "one dollar and other considerations," and the testimony of the notary is that Hough's explanation was that he " wanted the deed made so that he could expedite the sale; that he would not be troubled to get another conveyance; that they would arrange it among themselves; they would settle the matter among themselves afterwards." The sale afterwards made included all of the lands in Mississippi. We are satisfied that the quitclaim was given to Hough by Bennett for the purpose stated by Hough at the time. The record does not indicate that there was ever any settlement at any time made between the copartners of the partnership affairs, or a division or disposition of its real estate. The clear intention of the parties at the times of the purchases of these properties was that these lands were to be held and used for partnership purposes. That the Du Bose and Anderson lands were so purchased with partnership funds is not disputed. The $10,000 of the purchase price paid for the Bynum lands, by the manner in which it was paid into the firm and was afterwards paid to the seller by the firm, thereby became and was, for the purposes of the transaction, funds of the copartnership. The balance of $525 was procured as firm funds beyond dispute.

These conclusions have been arrived at without any consideration of the testimony of complainant, except as to such transactions on his part for the copartnership in Mississippi, of which his partner could have no equal

knowledge, and of which he could have known only by hearsay. The lapse of time and delay on the part of complainant before asking for an accounting have been considered. Under the circumstances of the case, we do not think that these facts are sufficient to work as an estoppel against him of the relief sought. We find that he was owner of a one-half interest in all the lands herein mentioned, and is entitled to an accounting with defendants for his interest in the proceeds arising from the sale thereof, and also of all the partnership affairs of said firm of Hough & Bennett.

The decree of the circuit court is affirmed, with costs.

MOORE, C. J., and GRANT, MONTGOMERY, and HOOKER, JJ., concurred.